**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Foster Robberson** (State Bar No. 005939)
Direct Dial: 602.262.5795
Direct Fax: 602.734.3856
Email: frobberson@lrrc.com

**Jared L. Sutton** (State Bar No. 028887)
Direct Dial: 602.262.0259
Direct Fax: 602.734.3924
Email: jsutton@lrrc.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

David L. Kurtz, individually and as President of David L. Kurtz, P.C. doing business as The Kurtz Law Firm,

Plaintiff,

vs.

The Goodyear Tire and Rubber Company, an Ohio corporation,

Defendant.

No. 2:19-cv-00152-PHX-GMS

**DEFENDANT THE GOODYEAR TIRE AND RUBBER COMPANY'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(6) and 9(b), Fed. R. Civ. P., defendant The Goodyear Tire & Rubber Company ("Goodyear") moves to dismiss the Amended Complaint (Doc. 1-1) for failure to state a claim and failure to state with requisite particularity the circumstances for alleged fraud and the required RICO predicate acts, under 18 U.S.C. §§ 1961, 1962 and 1964.

At its core, the Amended Complaint is the proverbial "second bite at the apple" by plaintiff David L. Kurtz, who previously represented the Haeger family in related federal and state lawsuits against Goodyear. Dissatisfied with this Court's denial of a request to expand the *Haeger I* case and with the settlement he negotiated on behalf of his clients in



Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

the *Haeger II* case, Kurtz now sues here in his own name.[1] The only reason to not label this lawsuit "Haeger III" is because, critically, the Haegers are not parties here.

While Kurtz was never retained as an attorney for Goodyear (indeed, he has been adverse to Goodyear for more than 15 years) and does not allege any relationship with Goodyear, he sues Goodyear for his "loss of revenue" and "loss of employment opportunities." (Amd. Complt. ¶ 69.) In particular, Kurtz alleges that because he chose to represent the Haegers in the *Haeger* I and *Haeger* II cases, Goodyear somehow interfered with his ability "to accept additional cases" and caused his firm to "incur debt associated with maintaining [Kurtz's] ongoing business pursuits." (*Id.* ¶¶ 66 & 68.) But, in reality, this case is a dogged attempt by Kurtz to continue *Haeger I* and *Haeger II* and obtain additional fees.

The Amended Complaint is lengthy — 41 pages, 228 paragraphs plus a three-page Introduction — and includes eight causes of action: RICO (Counts 1 & 2); fraud (Counts 3-5); abuse of process (Count 6); aiding and abetting (Count 7); and intentional interference with business expectancy (Count 8). All Counts fail as a matter of law:

- All Counts fail because Kurtz had no direct relationship with Goodyear and lacks standing and the essential element of proximate cause. *See* Sections I and III.
- The applicable statutes of limitation for all of Kurtz's various causes of action have run. *See* Section II.
- All RICO claims fail because proximate cause is lacking and each of the RICO predicate acts Kurtz has attempted to state is deficient as a matter of law. *See* Sections III(A) and IV.
- Kurtz's multiple fraud-based causes of action fail because of an absolute privilege applicable to Goodyear and the essential element of duty by Goodyear is absent. *See* Section V.
- Kurtz's other state law causes of action are all deficient as a matter of law. *See* Section VI.

[1] *Haeger I* was filed in this Court: No. 2:05-cv-02046-GMS. *Haeger II* was filed in the Arizona Superior Court for Maricopa County: No. CV2013-052753.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

## MEMORANDUM OF POINTS AND AUTHORITIES

Under the standard for motions to dismiss for Rule 12(b)(6), Goodyear accepts for purposes of this Motion only that the factual allegations of the Amended Complaint are true. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998); *Sky Jet AG v. Honeywell Int'l Inc.*, 2018 WL 6620493, at *2 (D. Ariz. Dec. 18, 2018) ("When analyzing a complaint for failure to state a claim under Rule 12(b)(6), '[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" (citations omitted)). Regardless, Kurtz's effort to launch "*Haeger III*" fails as a matter of law.

### I. THE AMENDED COMPLAINT IS AN IMPROPER HORIZONTAL APPEAL AND, IF ALLOWED, WOULD UNDERMINE A GOOD FAITH SETTLEMENT.

#### A. Kurtz improperly attempted to have another judge reconsider rulings in the *Haeger I* case.

A "horizontal appeal" is where a party maneuvers for a second trial judge to reconsider a first trial judge's rulings — a second bite at the apple outside the prescribed appeal process. Horizontal appeals are disfavored. They are wasteful of judicial resources and promote judge shopping. *Advocates for Individuals with Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 894 (D. Ariz. 2017) (quoting *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 279, 860 P.2d 1328, 1332 (App. 1993).

This lawsuit is Kurtz's effort at a horizontal appeal of a final ruling in *Haeger I* (HI Doc. 1223[2]). (Amd. Complt. ¶¶ 125, 133.) Kurtz filed this case in state court only 27 days after this Court denied his request, on behalf of the Haegers, for reconsideration of the August 15, 2018 dispositive decision (HI Doc. 1228). The case is no longer before the

[2] "HI Doc." identifies documents from the *Haeger I* court file. Goodyear asks the Court to take judicial notice of *Haeger I* and *Haeger II*, which are related cases. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (the trial court properly considered public records from a related state court case on a Rule 12(b)(6) motion because "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute" (internal quotations omitted)).

Arizona Superior Court only because Goodyear removed it to U.S. District Court, and then designated it as a related case to *Haeger I*.

Of course, this Court is thoroughly familiar with *Haeger I* because Judge Snow was assigned the case after Judge Silver's recusal. *Haeger I* began in 2005, as a product liability case concerning the G159 medium truck tire, and was settled in 2010. (Amd. Compl. ¶¶ 42 and 43.) The discovery sanction phase of *Haeger I*, which travelled from the District Court to the Ninth Circuit to the Supreme Court and back, began in 2011. (*Id.* ¶ 45.) On March 7, 2018, the Court ruled that Goodyear had waived any additional objections to the plaintiffs' fee request. (HI Doc. 1186.) Presently, all that remains in *Haeger I* is for the Court to rule on the amount of sanctions after taking into account necessary set-offs.

The Haegers, with Kurtz as their attorney, attempted to begin a phase three of *Haeger I*. On April 13, 2018, Kurtz, for the Haegers, filed Plaintiffs' Motion to Expand the Record and for Expanded Award of Attorneys' Fees, Costs and Other Relief for Goodyear's Fraud Upon the Court (32 pages) ("Motion to Expand") and Plaintiffs' Supplemental Statement of Facts (67 pages, 111 Exhibits) (HI Docs. 1197 and 1198). (Amd. Compl. ¶¶ 125, 131, 133.) The Court properly recognized that a new phase for *Haeger I* was inconsistent with — indeed, disallowed by — the comprehensive settlement agreement in *Haeger II*.

The Court enforced the *Haeger II* settlement agreement because it was unambiguous and "settled all claims, including the deceptions surrounding *Haeger I* which was the underlying focus of *Haeger II*, and carved out as an exception only the attorney fees claims pending at that time before the Supreme Court." (HI Doc. 1223, p. 4.) Accordingly, the Court rejected the Haegers' attempt to circumvent the *Haeger II* settlement. (*Id.*) (Amd. Compl. ¶ 133.) The Court also denied the request for reconsideration. (HI Doc. 1228.) Kurtz almost immediately began this case.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

The relief denied in *Haeger I's* Motion to Expand and now sought here are the same: an additional payout by Goodyear for Kurtz's benefit. The rationale in both instances was, according to Kurtz, because Goodyear wrongfully prolonged and complicated the *Haeger I* and *Haeger II* cases, thus requiring Kurtz to work longer and harder than he intended. (Amd. Complt. ¶¶ 157-159.) The payout sought, if *Haeger I* had been expanded, would have been based on "more than seven (7) years of fulltime work" or more than 15,000 attorney hours by Kurtz. (HI Doc. 1197, pp. 1 & 25.)[3]

In this lawsuit, Kurtz is similarly seeking remuneration based on his work in *Haeger I* and *Haeger II*. Here, he looks to the other side of the coin, alleging that but for the time he spent as the Haegers' lawyer he would have accepted "additional cases" and pursued other "business opportunities." (Amd. Complt. ¶¶ 66-68.) Consequently, just as with the failed *Haeger I* Motion to Expand, this case seeks more remuneration to Kurtz because he represented the Haegers in the previous litigation.

A comparison of the Amended Complaint and Plaintiffs' Supplemental Statement of Facts in Support of Motion to Expand the Record and for Expanded Award of Attorney's Fees, Costs, and Other Relief for Goodyear's Fraud Upon the Court ("SSOF") in *Haeger I* (HI Doc. 1198) confirms the very substantial overlap. As already noted, the fundamental premise for both this lawsuit and *Haeger I's* Motion to Expand was the claim by Kurtz of discovery abuses. Both extensively relied on the *Haeger I* case before the settlement (*e.g.*, Amd. Complt. ¶¶ 44-45; SSOF ¶¶ 24-29, 31-34, 36-44, 50, 54 & 63) and in the sanctions phase. (Amd. Complt. ¶¶ 44-45; SSOF ¶¶ 66-73). Both discuss discovery and disclosure in *Haeger II* (*e.g.*, Amd. Complt. ¶¶ 78-84 & 89-90; SSOF ¶¶ 74 & 75, 77-82, 83-87 & 92-103) and *Haeger II's* resolution (Amd. Complt. ¶¶ 121-122; SSOF ¶¶ 104-105).

[3] The Amended Complaint is conspicuously silent about compensation received by Kurtz under his contract with the Haeger clients for settlements (Amd. Complt. ¶¶ 43 & 116) and the sanction award by Judge Silver. (*Id.* ¶ 45.)

In addition, in both, Kurtz lays-out his conclusions about the tire (conclusions Goodyear vehemently disputes). The following are examples of common allegations:

| *Kurtz* Amended Complaint | *Haeger I* SSOF to Motion to Expand |
|---|---|
| "Following court order in *Haeger II*, Goodyear ultimately disclosed the adjustment information which revealed 3,484 adjustments of the G159 tire." (Amd. Complt. ¶ 89.) | "Pursuant to Court Order compelling Goodyear to disclose adjustment data, Goodyear finally produced adjustment records for the G159 in 2016. There were 3,484 adjustments arising out of G159 failures." (SSOF ¶ 151.) |
| With respect to property damage claim data, "[i]t revealed that these failures had involved at least 17 different motorhome manufacturers and 39 separate models of motorhomes." (Amd. Complt. ¶ 93.) | "The G159 failures involve 17 different manufacturers of motorhomes and 40 different models of motorhomes." (SSOF ¶ 148.) |
| "Goodyear's 2006 disclosure to NHTSA revealed that only approximately 34% of G159 tires were being sold for motorhome use . . . ." (Amd. Complt. ¶ 108.) | "NHTSA has now disclosed that Goodyear knew in May 2006 that only 34% of the G159s produced for the years 2000, 2001 and 2002 were actually sold for motorhome use." (SSOF ¶ 180.) |
| "The G159 displayed 100 death and injury claims out of 160,683 tires." (Amd. Complt. ¶ 142.) | "The highlighted claims in [a document produced in *Haeger II*] reveal 98 injury or death claims arising out of the G159 failures." (SSOF ¶143.)<br><br>"Goodyear manufactured 160,683 tires." (*Id.* ¶ 156.) |
| As viewed by Kurtz, certain disclosures from *Haeger II* "made the failure data skyrocket when motorhome failures were isolated in the light of the limited production statistics . . . ." (Amd. Complt. ¶ 114.) | "When Goodyear disclosed, pursuant to Judge Hannah's Order, the actual number of tires sold as original equipment on motorhomes, it made the failure data (as a percentage of production) for the G159 skyrocket." (SSOF ¶ 184.) |

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca ROTHGERBER CHRISTIE

There can be no doubt that the Amended Complaint is an attempt by Kurtz to obtain the payout he was denied in *Haeger I* by this Court's August 15, 2019 Order. The Court correctly held that the only proper parties — Goodyear and the Haegers — finally and irrevocably settled all disputes. *See* 8/15/2018 Order (HI Doc. 1223). Kurtz, with no standing and no legitimate claims against Goodyear, must not be allowed to end-run the Court's ruling.

**B. Kurtz's claims are barred by the *Haeger II* settlement.**

Kurtz also should not be allowed to disregard the *Haeger II* settlement that he negotiated and approved for his clients, and from which he profited as the Haegers' contingent-fee attorney. As noted, the Court applied the *Haeger II* settlement in refusing to expand the *Haeger I* case. *See* 8/15/2018 Order (HI Doc. 1223).

Settlements should be encouraged and respected. *Lundy v. Airtouch Communications, Inc.*, 81 F. Supp. 2d 962, 970 (D. Ariz. 1999) ("Arizona public policy favors settlement of legal controversies in general."); *Ahern v. Central Pacific Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) ("The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements. . . . [T]here is an overriding public interest in settling and quieting litigation.'") (citation omitted).

It is bad faith, at the least, for Kurtz to participate in a settlement as an attorney with the intention of subsequently subverting it. Given the duty of loyalty, Kurtz, as the Haegers' agent, may not place his interest before theirs even if he did not agree with the settlement. *Cf. IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 141, 149 (3rd Cir. 2004) (an agent who objected to a settlement is not "permitted to place its own interests ahead of [prinicipal's] interests, even if [agent] believed that [principal] was settling for too little"). Respect for settlements is crucial to the functioning of our judicial system. One purpose of settlements is to discourage or deter meritless claims. Otherwise, a settling party cannot "buy its peace," often the driving motivation for resolving a case.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca ROTHGERBER CHRISTIE

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Kurtz will doubtless argue that he did not sign the *Haeger II* settlement agreement. That is irrelevant as he had no viable legal claims to release (and still doesn't). His clients, the Haegers, held the potential legal claims <u>and those have been irrevocably and comprehensively released</u>. As one of the attorneys who negotiated the *Haeger II* settlement agreement, and who received a contingent fee thereunder, Kurtz should not be permitted to undermine it.

## II. ALL OF KURTZ'S CLAIMS ARE TIME-BARRED.

Plaintiff's claims are dispersed among three distinct limitations periods. Relevant authorities are:

| CLAIM | PERIOD | AUTHORITY |
|---|---|---|
| RICO | 4 years | *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151-53, 107 S. Ct. 2759, 2764-66 (1987) |
| Fraud | 3 years | A.R.S. § 12-543 |
| Aiding & Abetting | 3 years | *Serrano v. Serrano*, 2012 WL 75639, at *3 (Ariz. App. Jan. 10, 2012) |
| Abuse of Process | 2 years | *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414-15 (9th Cir. 1985) |
| Tortious Interference | 2 years | *Clark v. Airesearch Mfg. Co. of Ariz.*, 138 Ariz. 240, 243, 673 P.2d 984, 987 (Ariz. App. 1983) |

All claims in the Amended Complaint are time-barred under the foregoing authorities. In *Haeger I*, Kurtz, on behalf of the Haegers, filed the Motion for Sanctions for Discovery Fraud on May 31, 2011 (HI Doc. 938), which launched "the sanction proceedings." (Amd. Complt. ¶¶ 44 & 45.) Judge Silver issued her sanction order on November 8, 2012, not only sanctioning Goodyear and its former counsel but inviting the Haegers to file a claim for fraud (HI Doc. 1073). (Amd. Complt. ¶ 45.) Kurtz, on behalf of the Haegers, accepted the invitation and filed the *Haeger II* Complaint in Arizona Superior Court on May 20, 2013.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

A review of the *Haeger II* Complaint reveals that Kurtz, who authored and signed it, knew the essential nature of the legal claims now raised no later than May 20, 2013.[4] Because Kurtz did not file his Complaint in this case until October 1, 2018 — more than seven years after the *Haeger I* Motion for Sanctions for Discovery Fraud and five years after the *Haeger II* Complaint — all claims are time-barred. *Myers v. Ariz. Health Care Cost Containment Syst. (AHCCCS)*, 984 F. Supp. 1255, 1256 (D. Ariz. 1996) (barring claims under statute of limitations based on allegations in related lawsuit).

Claims accrue when, "by reasonable diligence," the plaintiff "could have" learned of them. *Coronado Dev. Corp. v. Superior Ct.*, 139 Ariz. 350, 352, 678 P.2d 535, 537 (App. 1984); *see also Pincay v. Andrews*, 238 F.3d 1106, 1109-10 (9th Cir. 2001) (constructive notice accrual rule applies to civil RICO claims). Reviewing the Amended Complaint in this case and Kurtz's pleadings in *Haeger II* (Ex. A hereto) shows that Kurtz not only "could have" learned but, in fact, did learn of the allegations underlying his claims no later than when he filed *Haeger II*—May 2013.

It makes no difference if Kurtz argues that Goodyear continued to conceal information. The relevant question is not when a plaintiff understands the full scope of the claims he is making, but when he knew or reasonably should have known that the alleged non-disclosure was happening, such that he could investigate and, if appropriate, bring suit. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("It is enough that the plaintiff should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim.") (citation and internal quotations omitted); *see also Coronado Dev. Corp.*, 139 Ariz. at 352, 678 P.2d at 537 (plaintiff need "not know every fact about his fraud claim before the statute begins to run").

---

[4] A copy of the Complaint filed in the Arizona Superior Court in *Estate of Leroy Haeger, et al. v. Goodyear Tire and Rubber Company, et al.*, *("Haeger II")* is attached as Exhibit A hereto. Under *Intri-Plex Techs.*, and similar authorities, the Court is entitled to take judicial notice of *Haeger II*. *See, e.g.*, 499 F.3d at 1052.

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

And indeed, take action is what Kurtz did by filing the sanctions motion in *Haeger I*, in 2011, and the *Haeger II* lawsuit, in 2013. He asserted his and his clients' belief that Goodyear was concealing information related to the G159 tire in related litigation. Kurtz even certified in *Haeger II* that he had conducted a thorough investigation. *See* Ex. A. *See* Ariz. R. Civ. P. 11(b) ("By signing a pleading . . . the attorney . . . certifies that to the best of [his] knowledge, information, and belief formed <u>after reasonable inquiry</u> . . . the factual contentions have evidentiary support . . . .") (emphasis added). Further, Kurtz's clients chose to settle *Haeger II*, which, as this Court has found, was a comprehensive settlement that resolved all claims the Haegers had against Goodyear. (HI Doc. 1223.)

By Kurtz's own admission, the factual predicate for his Amended Complaint – the alleged withholding of information related to the G159 tire in lawsuits – accrued no later than May 20, 2013, more than <u>five years before</u> he launched this most recent G159 fraud case. Because the applicable limitation periods for the causes of action asserted in the Amended Complaint are all less than five years, Kurtz's claims are time-barred and must be dismissed.

## III. DUE TO LACK OF PROXIMATE CAUSE, KURTZ DOES NOT HAVE STANDING TO ASSERT ANY CLAIMS AGAINST GOODYEAR.

### A. Kurtz lacks the required direct injury for RICO-related claims (Count I and Count II).

Relying on 18 U.S.C. § 1964(c), Kurtz claims Goodyear violated 18 U.S.C. §1962 (a), (c) and (d) (Amd. Complt. ¶ 36) and seeks, among other things, treble damages and attorneys' fees. (*Id*. p. 40.) However, for more than 25 years, courts have rejected the "expansive reading" of § 1964(c) that would allow an indirect plaintiff, like Kurtz, to pursue RICO claims.

Under a line of Supreme Court cases beginning with *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266-268, 112 S.Ct. 1311, 1316-1318 (1992), a plaintiff must allege that a "RICO predicate offense 'not only was a 'but for' cause of his injury,

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

but was the proximate cause as well.'" *Hemi Grp., LLC. v. City of NY*, 559 U.S. 1, 9 (2010). A plaintiff must allege a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (*quoting Holmes*, 503 U.S. at 268). "A link that is too remote, 'purely contingent' or 'indirect[t]' is insufficient." *Id.* (*quoting Holmes*, 503 U.S. at 271, 274). Theories of causation cannot "go beyond the first step." *Hemi*, 559 U.S. at 10.

"Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268-269, 112 S. Ct. at 1318. *See also Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (affirming dismissal of RICO claim; "In *Holmes*, the Court applied the proximate cause requirement to preclude a RICO suit by a plaintiff whose injury was entirely contingent on the injury of direct victims."); *Laborers' and Operating Engineers' Utility Agreement Health & Welfare Trust Fund for Arizona v. Philip Morris, Inc.*, 42 F. Supp. 2d 943, 946 (D. Ariz. 1999) (dismissing RICO claim relying on *Holmes*).

Here, the conduct as alleged by Kurtz was directed at the Haegers, who are the purported "direct victims." The misconduct alleged throughout *Haeger I* and *Haeger II* and this case was not directed at Kurtz, and any assertion otherwise belies the repeated claims made by Kurtz on behalf of the Haegers in the related cases.

In dismissing RICO claims, the Supreme Court in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 1998 (2006), explained, "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." In *Anza*, a steel company, Ideal, claimed it lost business to a competitor, National, because National fraudulently failed to charge sales tax to its customers, which "allowed National to reduce its prices without affecting its profit margin." 547 U.S. at 454, 126 S. Ct. at 1994.

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

The analysis in *Anza* sheds a bright light on the deficiencies in Kurtz's lawsuit. The "direct victim" of the alleged wrongful conduct in *Anza* was the State of New York, to whom sales taxes were allegedly not paid. Here, the alleged "direct victims" were the Haegers. *Anza* noted that the cause of Ideal's asserted harm "is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." 547 U.S. at 458, 126 S. Ct. at 1997. Similarly, the cause of Kurtz's asserted harm (loss of legal business) is entirely distinct from the alleged RICO violations (fraud and litigation misconduct). The "absence of proximate causation" was clear in Anza (as it was *Holmes*[5]), and is equally clear here.

The policy underlying this remoteness doctrine includes the severe mischief that would result from allowing an alleged indirect victim, such as Kurtz,[6] to bring suit. The first "motivating principle is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." 547 U.S. at 458, 126 S. Ct. at 1997. Ideal, in *Anza*, argued that not paying sales taxes gave National the ability to charge lower prices. But, as the Court explained, National "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud." *Id*.

Kurtz alleges he was not retained in contingent-fee cases by unknown prospective clients; however, these hypothetical cases could have gone to competitor law firms for sundry reasons. Stated otherwise, without *Haeger I* and *Haeger II*, whether more lucrative contingent-fee cases would have come to Kurtz is entirely speculative. Many factors other than a lawyer's availability control whether personal-injury clients choose a particular

---

[5] In *Holmes*, the SIPC, the agency charged with protecting customer's brokerage accounts, could not sue an alleged stock manipulator under civil RICO because the SIPC was too remote and its loss too attenuated. The "direct victim" in *Holmes* was the failed broker-dealer or its trustee. 503 U.S. at 269-270, 112 S. Ct. at 1318-1319.

[6] Goodyear uses the term "indirect victim" for Kurtz only in the context of the proximate cause analysis and only because this is the terminology used in the case law. In reality, Kurtz is not a "victim" of any kind.

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

contingent-fee lawyer. Further, the nature of the hypothetical cases and <u>the outcome of the cases</u> add layers of speculation to any damage analysis.

Kurtz claims loss of business opportunities. (Amd. Complt. ¶ 66.) In *Anza*, lost sales were "a second discontinuity between the RICO violation and the asserted injury." 547 U.S. at 459, 126 S. Ct. at 1997. As the *Anza* Court explained, "Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices." *Id*. It almost goes without saying that law firms, as with other businesses, lose and gain clients for many reasons. To sift through the reasons for Kurtz's purported business losses would be as much a "complex assessment" as in *Anza*.

In fact, the analysis applied to a contingent fee lawyer's practice would be even more demanding and uncertain. Contingent-fee lawyers do not generate revenue through the relatively straightforward mechanism of an agreed hourly rate charged for time spent performing services (similar to sale of goods). Instead, Kurtz's income is contingent on the unique outcome of each case: whether it was successfully settled or a verdict was won at trial; the amount of the settlement or verdict; the collectability of any verdict; the out-of-pocket costs invested; and more. Indeed, each contingent-fee case Kurtz hypothetically did not take would have to be individually assessed: cases-within-the-case for the Court to analyze. This would be more than a "discontinuity" (the word used in Anza); it is an impossibility.

Moreover, "[t]he requirement of a direct causal connection is especially warranted where immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza*, 547 U.S. at 460, 126 S. Ct. at 1998. In *Anza*, the State of New York, as the direct victim, "can be expected to pursue appropriate remedies." *Id*. Here, the alleged direct victims, the Haegers, not only could be expected to

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

pursue their own remedies, they did and obtained compensation through the post-settlement sanction proceedings in *Haeger I* and the settlement in *Haeger II*.

If Kurtz is allowed to proceed, in light of the *Haeger I* and *Haeger II* recoveries by his clients (in which he shared), the Court must protect Goodyear against unjust multiple recoveries. *Holmes*, 503 U.S. at 269, 1212 S. Ct. 1318 (". . . recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts to obviate the risk of multiple recoveries.").

Taking the allegations of the Amended Complaint as true for purposes of this Motion, the "direct victims," the Haeger family, have had their days in court and have recovered. Any claims by plaintiff Kurtz are indirect and too remote. As such, Counts 1 and 2 of the Amended Complaint should be dismissed.

**B. Proximate cause is fatally lacking for all of Kurtz's tort causes of action.**

Lack of proximate cause and remoteness are not only dispositive for the RICO claims but also for the other causes of action. "Proximate causation is additionally a necessary element of any tort, intentional or negligent." *Philip Morris*, 42 F. Supp. 2d at 950. Kurtz's non-RICO causes of action should also be dismissed.

In the *Philip Morris* case, a trust responsible for paying healthcare costs sued tobacco companies claiming they fraudulently and deceitfully marketed tobacco products leading to increased illness and healthcare costs. The plaintiffs' causes of action included RICO and fraudulent and negligent misrepresentation claims. 42 F. Supp. 2d at 945. All claims were dismissed primarily due to the plaintiffs' remoteness and lack of proximate cause. For the non-RICO claims, the court stated, "the same causation problems previously discussed fatally infect [plaintiffs'] misrepresentation claims." *Id*. at 951. The court had warned how the indirect position of the plaintiffs "would open a Pandora's box

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

of damage calculations." *Id.* at 948. The same is true here of Kurtz's non-RICO tort claims.

**IV. KURTZ HAS NOT AND CANNOT ALLEGE THE REQUIRED "PATTERN OF RACKETEERING ACTIVITIES" OR SPECIFIC "RACKETEERING ACTIVITIES."**

A RICO plaintiff must properly allege — and then prove — a "pattern of racketeering activity," under 18 U.S.C. § 1962(a), and specific "racketeering activities," as defined in 18 U.S.C. § 1961. *Nutrition Distribution v. Custom Nutraceuticals*, 194 F. Supp. 3d 952, 957 (D. Ariz. 2016), The Amended Complaint fails in both regards. At ¶ 36, it identifies the alleged racketeering activities relied on by Kurtz: mail and wire fraud; obstruction of justice pursuant to 18 U.S.C. § 1503; and witness tampering pursuant to 18 U.S.C. § 1512. Kurtz has insufficiently pled the alleged racketeering activities for the reasons discussed below. Moreover, the required "pattern" is completely absent.

**A. Mail fraud and wire fraud: no actionable conduct is alleged.**

The "gravamen" of any mail or wire fraud claim is the statutorily required "scheme to defraud." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 937 (N.D. Cal. 2013). The fraudulent scheme alleged in the Amended Complaint is not only identical to the fraud previously alleged on behalf of the Haegers but, if it occurred, it was directed at the Haegers – not Kurtz, thereby fatally defeating any claim of a "scheme to defraud."

Kurtz has not alleged – and could not do so truthfully – that Goodyear deceptively obtained money or property through any of its communications. The Ninth Circuit, in *Monterey Plaza Hotel Ltd. Partnership v. Local 483*, 215 F.3d 923, 926 (9th Cir. 2000), explained that the mail and wire fraud statutes "explicitly require an intent to obtain 'money or property [from the one who is deceived] by means of false or fraudulent pretenses, representations or promises.'" *See also U.S. v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (reversing mail fraud conviction because "the intent must be to obtain money or property from the one who is deceived").

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

In the *Monterey Plaza Hotel* case, a labor union made misrepresentations to the hotel's current and potential customers and thereby caused harm to the hotel. However, transmitting false information alone was not a RICO violation. As explained:

> The Union did not obtain property by deceiving the hotel or its customers; . . . . The Union's conduct may have been vexatious or harassing, but it was not acquisitive. The purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings.

*Id*. at 926-27 (emphasis in original).

Similarly in this case, Kurtz alleges that Goodyear issued deceptive press releases to the public and made other communications to NHTSA. (Amd. Complt. ¶¶ 52 & 155.) Even if these allegations were true, the press releases and communications were not directed to Kurtz (he was not the "victim") and they were not intended to obtain money or property. Further, the allegedly false court filings referenced in the Amended Complaint, at ¶ 52, were also not communications directed to Kurtz; nor were they intended to obtain property or money. Accordingly, Kurtz's mail and wire fraud allegations fail.

While Goodyear believes the foregoing arguments are dispositive, Kurtz's claims also do not satisfy Rule 9's requirement for particularity, applicable to allegations of mail and wire fraud in RICO cases. *Curtis & Assoc. v. Law Offices of David M. Bushman*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) (a plaintiff alleging RICO predicate acts "based upon fraudulent activities such a mail or wire fraud" must satisfy the particularity requirements of Rule 9(b); *In re Ariz. Theranos Inc. Litig.*, 256 F. Supp. 3d 1009, 1039 (D. Ariz. 2007) ("Rule 9(b) 'applies to civil RICO fraud claims,'" quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The particularity requirement of Rule 9(b) means that a plaintiff must specify the "who, what, when, where, and how" for the alleged fraud. *HM Hotel Properties v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 854-55 (D.Ariz. 2012); *see also Daddona v. Guadio*, 156 F. Supp. 2d 153, 161 (Rule 9(b)

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

requires "the time, place, speaker, and sometimes even the content of the alleged misrepresentations," quoting *Luce v. Edelstein*, 806 F.2d 49, 54 (2d Cir. 1986).)

Kurtz generally alleged, at ¶ 52 of the Amended Complaint, that Goodyear "utilized the mails with each deceptive deposition, false or misleading filing and associated false declarations submitted to the courts and plaintiffs . . . ." The Court (and Goodyear) are not told which depositions or portions of depositions are in dispute. Similarly, the Court (and Goodyear) are not told which filings or declarations were supposedly false.

As noted, the Amended Complaint, at ¶ 155, alleges that Goodyear made misrepresentations "in its wire or mail press releases" and "repeated these same deceptive claims to NHTSA . . . by use of wire or mail." These allegations, which Goodyear would vigorously contest absent the Rule 12(b)(6) standard, are mere formulaic conclusions.[7] For compliance with Rule 9(b), Kurtz was required to identify, at a minimum, the author and recipient (who), the particular communication in question (when and where), and explain the alleged deceptive claims (how). Rule 9(b) mandates dismissal of these mail and wire fraud claims.

Finally, Kurtz's mail and wire fraud allegations fail as predicate acts for reasons outside of Rule 9. Courts have repeatedly held that litigation filings (e.g., Amd. Complt. ¶ 52) cannot form the basis for RICO. In *Daddona*, 156 F. Supp. 2d at 162, the court explained:

> Attempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been scrutinized by the courts, and have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation.

*See also Curtis*, 758 F. Supp. 2d at 171 ("[P]ersuasive authority in this and other jurisdictions suggests that the litigation activities alleged in this Complaint cannot properly form the basis for RICO predicate acts.").

---

[7] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) ("a formulaic recitation of the elements of a cause of action will not do" in the face of a motion to dismiss).

*Curtis*, 758 F.Supp.2d at 172-73, warned of "absurd results" if "malicious prosecution claims such as those attempted to be alleged here" were sufficient for RICO. It said, "First, if routine litigation activities such as defending against a fee claim or prosecuting a malpractice action against a former attorney is a violation of RICO, then almost every state or federal action could lead to corollary federal RICO actions." *Id.* at 173. In addition, "this absurd result would chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts." *Id.* Finally, the court worried about the federal RICO statute usurping legitimate state court claims. *Id.*

Kurtz has not properly pled mail or wire fraud as RICO predicate acts for all of these reasons. Dismissal is required.

**B. Perjury or suborning perjury are not within the RICO statute and that's what Kurtz is alleging, not "witness tampering."**

The list of racketeering activities in 18 U.S.C. § 1961 is exclusive. *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 48 (1st Cir. 1991) ("Congress painstakingly enumerated a complete list of predicate acts in 18 U.S.C. § 1961(1). . . [A]llowing RICO damages for an injury caused other than by an enumerated predicate offense would be tantamount to rewriting the statute."); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). Congress did not include perjury or subornation of perjury as RICO predicate acts, the only specific conduct Kurtz has alleged against Goodyear and Goodyear witnesses.

The Amended Complaint is unrestrained in presenting Kurtz's unsubstantiated belief that various people at Goodyear "lied."[8] According to Kurtz, Goodyear "present[ed] witnesses willing to lie under oath" (Amd. Complt., Introduction, p. 1); unidentified "PAG witnesses regularly lied" (*Id.* ¶ 20); Goodyear employees "lied" during depositions in *Haeger II* (*Id.* ¶¶ 148-150); and an unnamed Rule 30(b)(6) witness "lied in Federal Court proceedings in Florida" (*Id.* ¶ 151). These allegations, even if presumed to be true, cannot support claims for RICO.

[8] While Goodyear understands the standard to be applied for this Motion (*see* p. 3 above), these accusations by Kurtz are unfounded and could constitute defamation.



Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

Willfully testifying to any material matter contrary to an oath may constitute perjury under 18 U.S.C. § 1621. Similarly, "procur[ing] another to commit any perjury" may be the crime of subornation of perjury under 18 U.S.C. § 1622. However, perjury and subornation of perjury, the crimes Kurtz has arguably alleged, are not included as "racketeering activities" under 18 U.S.C. § 1961(1).

The tampering statute relied upon by Kurtz (Amd. Complt. ¶ 36) encompasses extreme conduct – killing people or using physical force to prevent testimony (18 U.S.C. § 1512(a)), acts Kurtz has not claimed here. Further, it applies only to federal proceedings. *Green Leaf Nursey v. E. I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003). Thus, allegations by Kurtz outside of *Haeger I*, the federal case, cannot amount to witness tampering under the federal statute.[9] The Amended Complaint fails to identify any alleged improper influence of witnesses other than "lying" or encouraging "lying," which, if anything, fall within statutes that are not predicate acts under 18 U.S.C. § 1961.

**C. The Amended Complaint does not properly allege "obstruction of justice."**

Under 18 U.S.C. § 1503(a), anyone who "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be punished as provided in subsection (b)." While not entirely clear, this is presumably the statutory language relied upon by Kurtz for his final alleged RICO predicate act. (Amd. Complt. ¶ 36.) Regardless, Kurtz has not properly alleged that Goodyear violated the statute.

Because there are no references in the Amended Complaint to "threats or force" and no "threatening letter[s] or communication[s]" are identified, Kurtz must be relying on characterizations of Goodyear's conduct as "corrupt." *See, e.g.*, Amd. Complt. ¶ 14 ("corruptly concealing"); ¶ 37 ("corruptly influenced"); ¶ 47 ("corrupt endeavors"); ¶ 160

[9] The same is true with respect to the federal statute for obstruction of justice (18 U.S.C. § 1503(a)).

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca ROTHGERBER CHRISTIE

("corrupt scheme" and "corrupt act"). The statutory term "corrupt" has been held to be ambiguous. *U.S. v. Doss*, 630 F.3d 1181, 1186 (9th Cir. 2011) (discussing the term "corruptly persuades" in 18 U.S.C. § 1512). As applied by the Ninth Circuit, "corrupt" is not a synonym for dishonest, improper or even unethical. More is required. 630 F.3d at 1186-1190. The Amended Complaint, where Kurtz relies solely on conclusory and ambiguous language, is patently insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955.

*Collegesource, Inc. v. Academyone, Inc*., 597 Fed. App'x 116 (3rd Cir. 2015), highlights another deficiency. The plaintiff claimed that the submission of false affidavits in a court proceeding and destruction of electronic evidence were sufficient as RICO predicate acts under 18 U.S.C. § 1503(a). *Id*. at 126. The court disagreed explaining that such conduct, even though it could influence the outcome of the case, was not taken directly against parties, witnesses or jurors:

> Under our case law, only acts directly affecting parties, witnesses or jurors — and not other acts that may merely influence the proceedings — are cognizable as predicate acts under RICO. Consequently, we have never recognized obstruction of justice as a viable RICO predicate act except in cases involving witness intimidation.

*Id.* at 126 (emphasis in original) (internal quotation and citation omitted).

Kurtz's Amended Complaint does not allege witness intimidation or anything close to it — nor could it without violating Rule 11. At most, Kurtz alleges litigation conduct unrelated to witnesses or jurors or otherwise falling within the *Collegsource* case. This does not constitute obstruction of justice as a matter of law.

## V. ALL OF KURTZ'S STATE LAW FRAUD CLAIMS (COUNTS 3, 4 AND 5) FAIL AS A MATTER OF LAW.

### A. Kurtz's fraud claims are barred by the absolute litigation privilege recognized in Arizona cases.

Kurtz is seeking to hold Goodyear liable for allegedly fraudulent conduct in *Haeger I* and *Haeger II*. With limited inapplicable exceptions, neither parties to litigation nor their

counsel can be sued for allegedly fraudulent conduct in the litigation.[10] *Linder v. Brown & Herrick*, 189 Ariz. 398, 405-06, 943 P.2d 758, 765-66 (App. 1997) (dismissing misrepresentation claims against opposing counsel in prior litigation); *see also Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984) ("The privilege protects judges, parties, lawyers, witnesses and jurors.") (emphasis added). This privilege against suit is "absolute" in that the defendant's "motive, purpose or reasonableness" are irrelevant. *Green Acres*, 141 Ariz. at 613, 688 P.2d at 621.

Although the absolute privilege developed in defamation cases, Arizona courts apply it to claims such as those raised by the Amended Complaint. In the *Linder* case, the plaintiff alleged that opposing counsel in prior litigation "fail[ed] to disclose or produce" and "misrepresent[ed]" various facts the plaintiff believed were important. 189 Ariz. at 404, 943 P.2d at 764. Such a "fraud claim" against opposing counsel is "not recognized by Arizona law" because "conduct during the course of judicial proceedings is absolutely privileged." 189 Ariz. at 405-06, 943 P.2d at 765-66.

While there has been some controversy about this application of *Linder*, it was resolved in 2017. In *Edwards v. Smith*, 2017 WL 1230386, at *2 (Ariz. App. Apr. 4, 2017) (mem.), the Court of Appeals invoked the absolute privilege from *Linder* to dismiss claims that defendants used false and fraudulent evidence in prior litigation. In *Edwards*, the court relied on *Linder* to dismiss emotional distress claims, putting to rest the unduly narrow interpretation of *Linder* by some courts. 2017 WL 1230386, at *1-2; s*ee also Marson v. Cuthbertson*, 250 N.Y.S.2d 595, 597 (1964) ("Certain it is that an adversary attorney cannot seek damages against the adverse litigant for strenuously or aggravatingly

[10] The limited exceptions are for malicious prosecution and abuse of process claims. *See Lewis v. Swenson*, 126 Ariz. 561, 564, 617 P.2d 69, 72 (App. 1980) (malicious prosecution) and *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 360, 988 P.2d 143, 145 (App. 1999) (abuse of process). Kurtz has not asserted a claim for malicious prosecution and, as explained below, his claim for abuse of process fails for other reasons.



201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

opposing any such attorney.”). As one court has explained, “claims of fraud against a party opponent” – like those asserted by Kurtz against Goodyear – are “precisely [the] type of communication that the litigation privilege was intended to protect because the benefit of encouraging defendants to speak candidly in judicial proceedings outweighs the risk of a defendant abusing the privilege by lying under oath.” *Tyler v. Tatoian*, 137 A.3d 801, 807 (Conn. App. 2016).[11]

Prohibiting claims for conduct in the course of litigation works no injustice on a plaintiff like Kurtz. The Rules of Civil Procedure provide ample means to obtain relief for any non-disclosure or concealment of relevant information. *Linder*, 189 Ariz. 398, 406, 943 P.2d at 766 (plaintiffs were “foreclosed from bringing a fraud claim against opposing counsel,” but they had “other remedies available”); *Tyler*, 137 A.3d at 807 (the plaintiff could instead “fil[e] a motion to open the judgment” or seek that the party be charged with perjury or held in contempt of the court); *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App. 1994) (“The law provides for the punishment of” wrongful conduct in the course of litigation, “[b]ut <u>the law does not provide a cause of action to the attorney on the other side</u> for the performance of such acts.”) (emphasis added).

Kurtz, to benefit himself as well as his clients, has already taken advantage of these available mechanisms. On behalf of the Haegers, he filed a motion for discovery fraud in *Haeger I* in 2011. (Amd. Complt. ¶¶ 44 & 45.) Judge Silver’s award of “approximately $2.7 million in sanctions” (*Id.* 45) was then carried through the Ninth Circuit and Supreme Court and back to this Court. (*Id.* ¶¶ 56 & 124.) As discussed previously, this Court then

[11] There was discussion of the scope of the *Linder* rule in the *Haeger II* case, with Judge Hannah deciding that *Linder* did not preclude a claim for fraud during litigation. The proponents of narrowing the application of *Linder* relied on *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1121 (D. Ariz. 2009), where Judge Murguia reconsidered a prior ruling on the basis that “*Linder* was limited to the litigation-defamation context.” *Thompson* relied upon *Chalpin v. Snyder*, 220 Ariz. 413, 207 P.3d 666 (App. 2008), which was not a defamation case. Both Judge Murguia’s decision, in 2009, and Judge Hannah’s, in 2015, were without benefit of the 2017 *Edwards* case. *Edwards* leaves no doubt that the scope of *Linder* is not as narrow as applied by earlier cases.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

issued its August 15, 2018 Order (HI Doc. 1223), which Kurtz is attempting to sidestep. Kurtz, on behalf of the Haegers, also took advantage of common law causes of action in *Haeger II*. (*Id.* ¶¶ 77, 116 & 121-122.) Not only were the usual avenues of redress for litigation misconduct available to the Haegers and their attorney Kurtz, those avenues were pursued and recoveries obtained.

Goodyear denies that it acted wrongfully. But it also stands on the common-sense principle that "[i]f every time a lawyer is annoyed or disturbed by the unethical conduct of his opponent he may bring a lawsuit for damages against his opponent, the courts of this country would be unable to handle the flood of litigation which would ensue." *Harmatz v. Allstate Ins. Co.*, 170 F. Supp. 511, 513 (S.D.N.Y. 1959).

**B. Kurtz has no cause of action for non-disclosure because Goodyear did not owe Kurtz any duty.**

"Liability for nondisclosure lies against [o]ne who fails to disclose to another a fact . . . if, but only if, he is under a duty to the other . . . to disclose the matter in question." *Red River Res., Inc. v. Mariner Sys., Inc.*, No. CV 11-02589-PHX-FJM, 2012 WL 2507517, at *12 (D. Ariz. June 29, 2012) (citation and internal quotations omitted; alterations in original). The Amended Complaint does not allege — nor could it truthfully — that Goodyear ever entered into any relationship with Kurtz. In fact, for more than 15 years, Kurtz and Goodyear have been litigation adversaries. Counts 3, 4 and 5 fail as a matter of law because Goodyear did not owe Kurtz any duty.

In the context of *Haeger I* and *Haeger II*, the law is settled that a litigant's duty to disclose information and respond fully to discovery requests is owed <u>to the court</u>, not the parties. *See* Ariz. R. Civ. P. 11(b); *Lewis v. Swenson*, 126 Ariz. 561, 566, 617 P.2d 69, 74 (App. 1980) (any duty owed by adverse counsel with respect to the conduct of litigation is "owed to the court, and not to the adverse party"). Judge Silver, as well as this Court, has vindicated any violations of duty to the Court.

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Moreover, even if Goodyear owed a duty to the parties in the prior litigation, that was to the Haegers. Kurtz was acting at all times on behalf of the Haegers, never for himself. *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1540 (9th Cir. 1996), *rev'd on other grounds*, 532 U.S. 26, 118 S. Ct. 956 (law firm attempting to bring counterclaim based on prior litigation conduct was not a party to the prior case; "[R]ather, it was a counsel to the class on whose behalf the proceedings against [the potential counter-respondent] were brought. As such, any harm resulting from a settlement "was sustained by the class, not by class counsel"); *see also Linsey v. E.F. Hutton & Co.*, 675 F. Supp. 1, 4 (D.D.C. 1987) (bishop who managed investments for church had no personal claim that "the brokerage deceived him, as the investment decision maker," because he "was acting merely as the agent of the Church" and his decisions "were made on behalf of the Church").

Judge Silver addressed Goodyear's violations of duty to the Court in *Haeger I* and the Haegers pursued their remedies in *Haeger II*. There is no place for non-party Kurtz to bring his own lawsuit.

**C. Rule 9 also applies to Kurtz's fraud claims and requires dismissal.**

Rule 9(b) applies with equal force to the other fraud Counts in the Amended Complaint. *HM Hotel Properties*, 874 F. Supp. 2d at 854-55. Kurtz has failed to plead his fraud claims with the required particularity.

The many Rule 9 violations are too numerous to discuss individually. The Amended Complaint is rife with alleged general acts of deception, but without specificity as to what was allegedly misrepresented, who misrepresented it and to whom, when the misrepresentations were made, how Kurtz knows the alleged misrepresentations were intentional and more. These and similar violations of Rule 9 are found in ¶¶ 19, 20-22, 31, 39, 45, 48, 51, 53, 55, 60-75, 80-83, 86-87, 92, 96, 99-104, 108-109, 111, 113, 117, and 146-155.

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Given the statute of limitations issues throughout the Amended Complaint (*see* Section II), the failure to follow Rule 9 regarding a specific time is critical. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (Rule 9(b) requires enough specificity "that the defendant can prepare an adequate answer from the allegations.") (citation and internal quotations omitted).

**VI. THE ADDITIONAL STATE LAW CLAIMS FAIL AS A MATTER OF LAW.**

Intentional Interference Claim (Count 8): To state a valid claim, Kurtz had to allege, among other things, that Goodyear intentionally interfered with Kurtz's contract with the Haegers in a way that "induc[ed] or caus[ed] a breach" of that contract. *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10, 106 P.3d 1020, 1025 (Ariz. 2005). Yet nowhere in the Amended Complaint has Kurtz alleged that the Haegers breached their agreement with him or otherwise deprived Kurtz of a right under the contract with his clients. *Cf. State Farm Mut. Ins. Co. v. St. Joseph's Hosp.*, 107 Ariz. 498, 502, 489 P.2d 837, 841 (Ariz. 1971) (attorney stated valid claim against third party who intentionally induced client to fire attorney and deprive him of contingency fee).

Instead, as this Court is aware, the Haegers entered into a full and final settlement agreement in the *Haeger II* case. Those legal claims belonged to the Haegers and were settled by them, as recognized in the Amended Complaint. If Kurtz believes he did not receive a proper share of the contingent fee under contracts he made in the other cases, this is an issue between Kurtz and his clients or Kurtz and his co-counsel.

Abuse of Process Claim (Count 6): To state an abuse of process claim, Kurtz must allege facts to show "that one or more specific judicially sanctioned processes have been abused." *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257, 92 P.3d 882, 887 (App. 2004). Kurtz must "describe the abuse of a[] particular court process." *Id.*; *see also Morn v. City of Phoenix*, 152 Ariz. 164, 168, 730 P.2d 873, 877 (App. 1986) ("Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the course

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

of the process, is required . . . ." (citation omitted)). He has failed to meet these requirements.

The Amended Complaint very generally claims "misleading filings, purposely deceptive pleadings, obstructing access to evidence" (Amd. Complt. ¶ 210) and other alleged wrongs; however, it fails to identify any specific process Goodyear allegedly misused after October 31, 2016, the applicable limitations period. This is fatal to Kurtz's Count 6. Because of the two-year statute of limitations applicable to abuse of process claims (*see* Section II above), Kurtz can only rely on post-October 31, 2016 conduct to support this claim (that is, two years before he filed this lawsuit).

The Amended Complaint does not identify any litigation conduct in the relevant time period that could constitute abuse of process. The only litigation conduct within this period alleged in the Amended Complaint relates to Goodyear's disclosure of additional documents. (Amd. Complt. ¶ 109.) This was an act of litigation compliance, not abuse. The abuse of process cause of action (Count 6) fails as a matter of law.

Aiding and abetting claim (Count 7): Aiding and abetting requires "as an essential element, the commission of a tort." *Caruthers v. Underhill*, 230 Ariz. 513, 526, 287 P.3d 807, 820 (App. 2012). Because, as explained above, Kurtz has not stated a viable tort claim against Goodyear, his aiding and abetting claim (Count 7) also fails as a matter of law.

## VII. CONCLUSION

Despite his persistence, there is no legal or factual basis for Kurtz to launch his own Haeger-related litigation. The Amended Complaint is a novel but legally ill-fated attempt to obtain additional compensation by an attorney who has no direct relationship with Goodyear and who has, on more than one occasion, settled the legally viable claims on behalf of clients he represented. All causes of action asserted in the Amended Complaint fail as a matter of law. The Court should grant Goodyear's Motion to Dismiss.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca ROTHGERBER CHRISTIE

RESPECTFULLY SUBMITTED this 21st day of February, 2019.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/ *Foster Robberson*
Foster Robberson
Jared L. Sutton

and

PORTER WRIGHT MORRIS & ARTHUR LLP
Jill G. Okun (admitted *pro hac vice*)
jokun@porterwright.com
950 Main Avenue, Suite 500
Cleveland, Ohio 4413-7206
Phone: 216-443-2508
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David L. Kurtz
The Kurtz Law Firm
7420 East Pinnacle Peak Road, Suite 128
Scottsdale, Arizona 85255

Clyde Talbot Turner
Turner & Associates, P.A.
4705 Somers Avenue, Suite 100
North Little Rock, Arkansas 72116

/s/ *June Yourgulez*
Employee of Lewis Roca Rothgerber Christie LLP