1   David L. Kurtz - 007433
    dkurtz@kurtzlaw.com
2   **THE KURTZ LAW FIRM**
    7420 East Pinnacle Peak Road, Suite 128
3   Scottsdale, Arizona  85255
    Telephone: (480) 585-1900
4
    Clyde Talbot Turner – 85158
5   tab@tturner.com
    **TURNER & ASSOCIATES, P.A.**
6   4705 Somers Avenue, Suite 100
    North Little Rock, Arkansas  72116
7   Telephone: (501) 791-1251

8   Attorneys for Plaintiffs

9

10              **IN THE UNITED STATES DISTRICT COURT**

11                **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 12  David L. Kurtz, et al., | No. CV-19-00152-PHX-GMS |
| 13               Plaintiffs, | |
| 14  vs. | **JOINT CASE MANAGEMENT REPORT** |
| 15  The Goodyear Tire & Rubber Company, | |
| 16               Defendant. | |

17

18          Pursuant to Rule 26(f), FRCP, and the Court's January 10, 2019 Order, the parties

19   hereby submit their Joint Case Management Report.

20   **1.    PARTIES WHO ATTENDED THE RULE 26(f) MEETING AND
          ASSISTED IN DEVELOPING THE CASE MANAGEMENT REPORT:**
21

22          Plaintiffs, through David Kurtz, and defendant, through Foster Robberson, Jared

23   Sutton and Jill Okun, participated in the telephonic Rule 26(f) meeting on March 19,

24   2019.  Counsel for all parties have participated in preparing this Report.

25   **2.    PARTIES:**

26          Plaintiffs:  David L. Kurtz individually and David L. Kurtz, P.C. dba The Kurtz

27   Law Firm

28          Defendant:  The Goodyear Tire & Rubber Company

**3.      THE NATURE OF THE CASE:**

    **A.      Statement by Plaintiffs:**

The underlying product liability suit was initiated in 2005 with the focus on a Goodyear G159 tread separation and motorhome rollover accident (*Haeger* I).   The G159 was designed for *stop-and-go* delivery truck/city use, but also was applied on motorhomes.   The complaint alleged the tire was defective by design when applied to motorhome highway use because it posed an unreasonable risk of failure when used in that manner.   Before the first discovery requests in September 2006, Goodyear was advised of Plaintiffs' defect theory that the tire – by design -- generated excessive internal heat when used as a highway travel-tire, especially in prolonged use, and that when used in that manner, posed a dangerous risk of tread separation failure.   One measure of the defective nature of a product, including a tire, is whether it has suffered a significant number of failures in operation.   In the context of product recalls, a defect determination can be made exclusively on the performance record of the tire.   It need not be a substantial percentage of the total number of tires produced, but must create a risk of danger to the consuming public when used in the manner intended.   *United States v. General Motors Corp.*, 518 F.2d 430 (D.C. Cir. 1975).

Before Goodyear answered the first round of discovery in November, 2006, only Goodyear knew that there had been at least 84 injuries or deaths and hundreds of highway speed failures of the G159 when used on motorhomes; 90% of all G159 accidents causing injury or death involved motorhomes; the failures were occurring on dozens of different makes and different models of motorhomes; there had been 35 G159 failures in Arizona alone causing property damage, injury or deaths; the failures were occurring on all wheel locations; there had been more than 3,000 adjustment/warranty returns and there had been 37 suits filed for G159 failures.   Though disclosure was requested in 2006, the data was never disclosed during the course of *Haeger* I, which was managed by Judge Silver, including the sanction proceedings.

1    At the suggestion of Judge Silver, *Haeger* II was filed against Goodyear and
2    counsel in May, 2013 in Arizona state court alleging fraud and abuse of process.  Despite
3    the mandates of A.R.C.P. 26.1, discovery requests and court orders, it was not until
4    September 29, 2016, that Goodyear first disclosed a complete list of G159 tire failures,
5    which included vehicle make and manufacturer.  The disclosed list for the first time
6    verified that the vast majority of the more than 600 failures causing property damage,
7    injury or death involved motorhomes.  It was not until mid-October, 2016 that Goodyear
8    for the first time disclosed 6,000-plus pages of property damage claim records that
9    showed the breadth and depth of Goodyear's knowledge of G159 tire failures, and that
10   the failures were occurring in almost equal numbers on the front and rear of the
11   motorhomes when used at highway speeds.

12   Finally, after entry of a court order compelling disclosure, Goodyear revealed for
13   the first time the breadth and depth of its communications with the National Highway
14   Traffic Safety Administration, which was first requested back in 2006.  Though
15   Goodyear had repeatedly swore under oath during Haeger I that it did not know the
16   number of G159s sold for motorhome use, the newly disclosed NHTSA documents
17   showed that Goodyear not only knew the precise number sold for use on motorhomes,
18   but that it was but a small fraction of the some 160,000 G159 tires manufactured.  The
19   NHTSA records also revealed that Goodyear had likewise concealed the existence of
20   literally hundreds of G159 failures from the government despite very specific requests
21   for that information.

22   In combination, these new disclosures revealed that the G159 had a failure rate –
23   as measured in the industry by tire volume and product failures -- that was literally
24   unprecedented in tire manufacturing, much less as to other consumer products.  Within
25   weeks of the last disclosure of data first requested in 2006, Goodyear promptly settled
26   with the Haegers.

27   After payment of contingency fees, the settlements with the Haegers, though
28   substantial, left Plaintiffs with a multi-million dollar revenue loss (crediting revenue

from all sources), contrasted to prior years of consistent profitability.  Goodyear well knew of these losses and specifically excluded Plaintiffs' claims from the Haeger settlement.  The damage to Plaintiffs' business and property was directly caused by Goodyear's decade long orchestrated fraud and concealment, which was accomplished with the knowing participation of outside counsel, Goodyear in-house and outside experts, and its 30(b)(6) corporate spokespersons.  As the record reflects, once the long-concealed truth was revealed about the deception orchestrated by Goodyear and its co-conspirators and agents relating to failure data and the government deception emerged, Goodyear immediately settled, as it would have years earlier had it been honest.  Instead, Plaintiff, a sole practitioner, was required to devote thousands upon thousands of unnecessary hours in multiple Haeger cases and multiple related appeals, including more than 2,000 filings and 60 depositions, all of which culminated in the destruction of his practice.

This suit sets forth the claims for recovery of these business damages.

**B.    Statement by Defendant:**

Goodyear objects to and does not join Section 3(A) of this Report because it includes multiple inaccuracies and is neither a concise nor an objective statement of the case as called for in the January 10, 2019 Order.  As a statement of the case in compliance with the Order, Goodyear presents the following:

Plaintiff David L. Kurtz is an attorney licensed in Arizona and President of David L. Kurtz P.C. (collectively "Kurtz").  Kurtz represented members of the Haeger family in two prior related cases:  *Haeger I* filed in this Court (No. 2:05-cv-02046-GMS) and *Haeger II*, filed in the Arizona Superior Court for Maricopa County (No. CV2013-052753).  Goodyear was a defendant in both *Haeger I* and *Haeger II*.  *Haeger I* and *II* were resolved by comprehensive settlement agreements whereby payments were made to the plaintiffs' clients and releases were executed.

In this case, plaintiffs are alleging that Kurtz's legal practice was damaged by Goodyear as a consequence of Kurtz's representation of the Haegers in *Haeger I* and

*Haeger II*.  Plaintiffs have asserted eight causes of action:  RICO (Counts 1 & 2), fraud (Counts 3-5), abuse of process (Count 6), aiding and abetting (Count 7) and intentional interference with business expectancy (Count 8).  The nature of the damages sought by plaintiffs are for "loss of revenue" and "loss of employment opportunities."  *See* Amd. Complt. ¶ 69.

Goodyear denies that it has caused any harm to Kurtz and asserts that the claims presented in this case are not justiciable.  On February 21, 2019, Goodyear filed a Motion to Dismiss under Rule 12(b)(6).  For more information about Goodyear's positions, the Court is directed to the pending Motion to Dismiss.

**4.     JURISDICTION:**

The case was removed from the Arizona Superior Court for Maricopa County. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331 (premised on plaintiff's RICO claims).

**5.     PARTIES NOT SERVED:**

None.

**6.     WHETHER ANY PARTY EXPECTS TO ADD PARTIES TO THE CASE OR OTHERWISE TO AMEND PLEADINGS:**

No parties are expected to be added.

There is a pending Motion to Dismiss.  Plaintiffs state that depending on the Court's determinations, an amendment to the Amended Complaint may be required.

**7.     CONTEMPLATED MOTIONS AND STATEMENT OF ISSUES TO BE DECIDED BY THOSE MOTIONS:**

Other than motions that may be occasioned by discovery or the need for judicial notice, Plaintiffs do not presently contemplate any unique or special motions.

In the event Goodyear's pending Motion to Dismiss is not granted in full, Goodyear expects to file motions for summary judgment, following development of an appropriate record, to address any remaining causes of action.  If the case proceeds, Goodyear anticipates that it will seek protective orders relating to discovery and

Goodyear will file appropriate motions if the parties cannot stipulate. As a consequence of the Rule 26(f) conference with Mr. Kurtz, on March 19, 2019, where Goodyear's counsel learned about plaintiffs' plan for depositions in this case, Goodyear anticipates filing discovery-related motions addressing confidentiality and privilege and to prevent unnecessary and potentially harassing discovery practices. *See, e.g.*, Section 14(A) (stating plaintiffs' plan for depositions).

**8.    WHETHER THE CASE IS SUITABLE FOR REFERENCE TO A UNITED STATES MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE OR TRIAL:**

No.

**9.    STATUS OF RELATED CASES PENDING BEFORE OTHER COURTS OR OTHER JUDGES OF THIS COURT:**

*Haeger v. Goodyear* (CV-19-00152-PHX-GMS) (*Haeger I*) is pending before this Court on remand from the United States Supreme Court (original product liability suit and subsequent sanction award). In *Haeger I*, the parties will be asking the Court to make a determination of the amount of the sanction award. In addition, in *Haeger I*, Goodyear may bring a motion to recover the attorneys' fees it incurred in enforcing its 2017 settlement agreement with the Haegers.

*Haeger v. Goodyear; et al.* (*Haeger II*), is pending before the Arizona Court of Appeals relating to Goodyear's appeal of the trial court's decision to vacate a protective order that applied to information exchanged in discovery that Goodyear believes is confidential and unseal portions of the record. The pending appeal relates to interveners, Center for Auto Safety and Spartan Motor Co. The Haegers are not parties.

**10.    ISSUES REGARDING PRESERVATION, DISCLOSURE OR DISCOVERY OF ELECTRONICALLY STORED INFORMATION, INCLUDING THE PARTIES' PRESERVATION OF ELECTRONICALLY STORED INFORMATION AND THE FORM OR FORMS IN WHICH IT WILL BE PRODUCED:**

Potentially relevant ESI is in the possession of or available to the parties as a result of discovery in the related cases. To the extent any further ESI production is required, plaintiffs desire for it to be produced in paper form. Goodyear is unable to

agree to that stipulation at such an early time in the case, when it is unknown how plaintiffs have maintained their records or the quantity of records.  Goodyear states that the parties should produce information in a reasonably usable format as dictated by the circumstances.

**11.   ISSUES RELATING TO CLAIMS OF PRIVILEGE OR WORK PRODUCT:**

Plaintiffs' Statement:  Plaintiffs believe that Goodyear's disclosures in 2016 revealed that Goodyear and its agents were engaged in fraudulent conduct which waived any privilege relating to long-concealed failure data and NHTSA communications.

Defendant's Statement:  Goodyear disputes that there has been any privilege waiver, as plaintiffs claim.  Given plaintiffs' stated discovery plan, in which they will seek approximately 10 depositions (*see* Section 14(A)), Goodyear anticipates substantial conflicts relating to privilege and the scope of proper discovery.

**12.   WHETHER AN ORDER UNDER FEDERAL RULE OF EVIDENCE 502(d) IS WARRANTED IN THIS CASE:**

Goodyear requests a Rule 502(d) Order.

**13.   COMPLIANCE TO DATE WITH THE MIDP:**

The parties have not exchanged disclosure statements as of this writing based on an understanding that disclosures will be due following the Court's decision on Goodyear's Motion to Dismiss.

**14.   DISCOVERY:**

   **A.   The Extent, Nature and Location of Discovery Anticipated by the Parties and Why it is Proportional to the Needs of the Case:**

Plaintiffs believe that most of the relevant discovery has already been accomplished in *Haeger* I and *Haeger* II.  The Plaintiffs expect to take approximately ten (10) depositions of certain former/current employees of Roetzel & Andress, Fennemore Craig, select members of Goodyear's Board of Directors, Goodyear

Associate General counsel and outside counsel utilized in *Haeger* II.  The majority of the depositions will be taken in Ohio.

If the case continues beyond the Motion to Dismiss, Goodyear presently expects its discovery will focus on ascertaining whether plaintiffs incurred any damages and if so, the extent of the damages.  The related cases (*Haeger I* and *Haeger II*) did not address the operations of Kurtz's law practice or any related claims for damages.  Accordingly, these issues must be fully developed in this litigation.  Following Mandatory Initial Discovery Responses, Goodyear anticipates serving interrogatories and requests for production of documents (if all relevant documents are not disclosed with plaintiffs' MIDP responses), related to plaintiffs' finances, fee agreements, indebtedness, co-counsel agreements, and time spent on and allocation of work related to the *Haeger* cases.  Goodyear would likely depose David Kurtz, employees of the Kurtz Law Office during the relevant time, attorneys who collaborated with Kurtz in the *Haeger I* and *Haeger II* cases, the Haegers (including a representative of the Estate of Leroy Haeger, Donna Haeger, Barry Haeger, and Suzanne Haeger), attorneys who were potential sources of referrals to Kurtz during the relevant time and clients or alleged would-be clients of Kurtz.  Goodyear cannot reasonably estimate the number of depositions that will be necessary because it is unknown whether Kurtz's alleged damages are subject to potential verification through the discovery process, although it is likely that at least eight depositions will be necessary.

**B.    Suggested Changes, if any, to Discovery Limitations Proposed by the Federal Rules of Civil Procedure:**

None suggested at present.

**C.    Number of Hours Permitted for Each Deposition:**

The presumptive limit set forth in Rule 30(d)(1) (one day of seven hours) will likely be sufficient.  If circumstances arise where this limitation should be addressed, the parties will consult and then, if necessary, bring the matter before the Court.

1   **15.    WHEN DID THE PARTIES SERVE THEIR MIDP DISCOVERY**
2   **RESPONSES:**

3   The parties have yet to serve MIDP discovery responses.  *See* Section 13.

4   **16.    DATES FOR THE FOLLOWING:[1]**

5       **A.    Deadline for Completion of Fact Discovery and Final Supplementation**
6   **of Discovery Responses Under the MIDP.**

7       Plaintiffs' Position:  90 days after Court's ruling on pending Motion to
8   Dismiss, should it be denied.

9       Defendant's Position:   10 months following the Court's ruling on the
10  pending Motion to Dismiss, if it is not granted in full.

11      **B.    Dates for Full and Complete Expert Disclosures Under Federal Rule**
12  **of Civil Procedure 26(A)(2)(A)-(C).**

13      Plaintiffs' Position: 120 days after Court's ruling on pending Motion to Dismiss,
14  should it be denied.

15      Defendant's Position: 11 months following the Court's ruling on the pending
16  Motion to Dismiss, if it is not granted in full.

17      **C.    Deadline for Completion of all Expert Depositions.**

18      Plaintiffs' Position: 150 days after Court's ruling on pending Motion to Dismiss,
19  should it be denied.

20      Defendant's Position: 13 months following the Court's ruling on the pending
21  Motion to Dismiss, if it is not granted in full.

22      **D.    A Date by Which the Parties Shall have Engaged Face-to-Face Good**
23  **Faith Settlement Talks.**

24      Plaintiffs' Position: 150 days after Court's ruling on pending Motion to Dismiss,
25  should it be denied.

26  ---
27  [1] The parties are cognizant of their responsibility to propose a schedule with actual
    dates, as opposed to elapsed time.  Given the pending Motion to Dismiss, however, it is
    impractical to propose specific dates and any effort to do so would be meaningless
28  because deadlines will necessarily flow from the Court's ruling on the Motion.

1  Defendant's Position: 11 months following the Court's ruling on the pending

2  Motion to Dismiss, if it is not granted in full.

3  **E.    A Deadline for Filing Dispositive Motions.**

4  Plaintiffs' Position: 150 days after Court's ruling on pending Motion to Dismiss,

5  should it be denied.

6  Defendant's Position: 15 months following the Court's ruling on the pending

7  Motion to Dismiss, if it is not granted in full.

8  **17.    WHETHER A JURY TRIAL HAS BEEN REQUESTED AND WHETHER**
9  **A REQUEST FOR A JURY TRIAL IS CONTESTED:**

10  Plaintiffs have requested a jury trial.  Goodyear does not contest plaintiffs' right

11  to a jury trial if the Court determines that the legal claims are justiciable and material

12  issues of fact are presented.

13  **18.    THE PROSPECTS FOR SETTLEMENT, INCLUDING ANY REQUEST**
14  **OF THE COURT FOR ASSISTANCE IN SETTLEMENT EFFORT:**

15  Plaintiffs' Position:  Given history, poor.

16  Defendant's Position:  At the Rule 26(f) conference, Goodyear's counsel advised

17  Mr. Kurtz that Goodyear was not presently open to settlement discussions because of a

18  resolute belief that the legal and factual allegations in this case are not well founded.

19  **19.    ANY OTHER MATTERS THAT WILL AID THE COURT AND PARTIES**
20  **IN RESOLVING THIS CASE IN A JUST, SPEEDY AND INEXPENSIVE**
   **MANNER AS REQUIRED BY F.R.C.P. 1:**

21  The Plaintiffs believe that it would be beneficial to the Court to set a discovery

22  status conference 30-days following the Court's ruling on the Motion to Dismiss, should

23  it be denied.   Plaintiffs expect there will be disagreements regarding disclosure

24  obligations which could be promptly addressed and resolved in an efficient manner

25  during such a conference.

26  Given the Court's protocols, Goodyear believes it is more efficient to set

27  discovery conferences if and when actual disputes arise.

28

1   DATED this 29th day of March, 2019.

2                                      THE KURTZ LAW FIRM

3

4                                      By:_____/s/ David L. Kurtz_____
                                       David L. Kurtz
5                                      7420 East Pinnacle Peak Road, Suite 128
                                       Scottsdale, AZ   85255
6
                                       Clyde Talbot Turner
7                                      TURNER & ASSOCIATES, P.A.
                                       4705 Somers Avenue, Suite 100
8                                      North Little Rock, AR   72116

9                                      *Attorneys for Plaintiff*

10                                     LEWIS ROCA ROTHGERBER CHRISTIE
                                       LLP
11

12                                     By:_____/s/ Foster Robberson (with permission)_____
                                       Foster Robberson
13                                     Jared L. Sutton

14                                     *and*

15                                     PORTER WRIGHT MORRIS & ARTHUR LLP

16

17                                     By:_____/s/ Jill Okun (with permission)_____
                                       Jill G. Okun (admitted *pro hac vice*
18
                                       *Attorneys for Defendant*
19

20

21

22

23

24

25

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

☒     I hereby certify that on March 29, 2019, I electronically transmitted the attached

3
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5
Foster Robberson
frobberson@lrrc.com

6
Jared L. Sutton
jsutton@lrrc.com

7
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200

8
Phoenix, AZ   85004-2595

9
Jill G. Okun
jokun@porterwright.com

10
PORTER WRIGHT MORRIS & ARTHUR LLP
950 Main Street, Suite 500

11
Cleveland, OH   44113

12

13
☐     I hereby certify that on March 29, 2019, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

14

15

16

17
By    /s/ K. C. Rusboldt

18

19

20

21

22

23

24

25

26

27

28