Tab Turner – 85158
tab@tturner.com
**TURNER & ASSOCIATES, P.A.**
4705 Somers Avenue, Suite 100
North Little Rock, Arkansas 72116
Telephone: (501) 791-1251

David L. Kurtz - 007433
dkurtz@kurtzlaw.com
**THE KURTZ LAW FIRM**
7420 East Pinnacle Peak Road, Suite 128
Scottsdale, Arizona 85255
Telephone: (480) 585-1900

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David L. Kurtz, et al., | No. CV-19-00152-PHX-GMS |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' MOTION FOR RECONSIDERATION PURSUANT TO LRCiv 7.2(g)** |
| The Goodyear Tire & Rubber Company, | |
| Defendant. | |

Plaintiffs move for reconsideration of the Court's July 9, 2019, Order granting Goodyear's Motion to Dismiss for failure to state a claim based upon the statute of limitations. [Doc. 34] Although Plaintiffs recognize that motions for reconsideration are "disfavored" absent a showing of manifest error or of the existence of new facts or legal authority (LRCiv. 7.2(g)), Plaintiffs believe the following matters were overlooked or misapprehended by the Court and represent manifest error.

1. The Court either overlooked or misapprehended controlling case law and related facts deemed admitted which establish that the RICO 18 U.S.C. 1962(d) conspiracy is not barred by the May 2013 statute of limitations. The conspiracy to conceal all failure data and NHTSA communications continued until late 2016 when Goodyear finally complied with multiple court orders compelling Goodyear to disclose the information

Mtr

which rendered the G159 indefensible and compelled Goodyear to quickly settle *Haeger* II.  With a continuing conspiracy each act that is part of the violation and causes injury starts the statutory period running again.  *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189 (1997).  The ongoing conspiracy caused thousands of hours of unnecessary work.

2.      The Court either overlooked or misapprehended the fraudulent concealment claim and related facts, which toll the statute of limitations under Arizona law.  Fraudulent concealment in Arizona is a fact question and, when it is proved at trial, relieves a party of the duty of diligent investigation required by the discovery rule and the limitations period is tolled until such concealment is discovered, or reasonably should have been discovered. *Walk v. Ring*, 44 P.3d 990 (Ariz. Ct. App. 2002).  Fraudulent concealment claims were specifically pleaded but not addressed by the Court.

3.      The Court either overlooked or misapprehended facts deemed admitted relating to the abuse of process and intentional interference claims, which occurred *after* the May 2013 statute of limitation date adopted by the Court. Goodyear is deemed to admit that this conduct caused and will continue to cause damage.

4.      The Court overlooked or misapprehended the nature of damage claim. By mistakenly concluding that the plaintiffs' damage claim arose from the failure to disclose "test results," the Court effectively altered the nature of the cause of action and what Plaintiff plead.

5.      The Court either overlooked or misapprehended controlling Arizona case law, which establishes that the statute of limitations does not accrue until a party discovers the *cause* of its damages, which did not occur until 2016.

6.      The Court either overlooked or misapprehended facts deemed admitted in the Amended Complaint which set forth acts of mail fraud, obstruction of justice, abuse of process and intentional interference with plaintiffs' contract, which occurred and caused damage *after* the May 2013 statute of limitation adopted by the Court.

Plaintiffs request the Court reconsider its determination and vacate its Judgment dismissing the action, all consistent with the foregoing.  [Doc. 35]

## DISCUSSION

As noted by the Court, "in deciding a Rule 12(b)(6) motion, the Court must accept all factual allegations in the Complaint as true, in addition to the reasonable inferences that can be drawn from them." [Doc. 34 at 3.]

## I.   THE CENTRAL FACTS DEEMED ADMITTED FOR PURPOSES OF THIS MOTION.

The Court overlooked or misapprehended the gravamen of the subject litigation, which is manifestly unjust. This case is *not* about Goodyear's failure to disclose test results, as the Court concluded.  (Doc. 34, p. 2, ll. 16-17.)  As noted by Judge Silver, Goodyear has always maintained that the long concealed test results were no cause for concern and the tire remained defensible.  *Haeger v. Goodyear*, 906 F. Supp.2d 938, 962 (D. Ariz. 2012).  The Court correctly notes that the plaintiffs were aware of *that* deception many years ago.  *Haeger* II was filed in May 2013, to pursue the Haegers' damage as a result of concealing the tests, which diminished the 2010 settlement value of the case.

This case seeks different damages from different deceptions.  The damages at issue are plaintiffs' business revenue losses caused by Goodyear's years of concealment of death and injury claims, property damage claim files, adjustment records and NHTSA communications, which were only disclosed in late 2016 pursuant to Court orders compelling disclosure.  When disclosed, Goodyear promptly settled *Haeger* II, as the disclosures "rendered the G159 indefensible" as the most lethal tire made in American commercial truck tire manufacturing history.  (Amended Complaint, ¶¶ 77-84, 89-95, 97-103, 109-115.)

To understand the context of the Complaint and why the Court's conclusion about "testing" is incorrect, a brief review of certain key items is necessary. For instance, Goodyear admits, as it must, the RICO enterprise allegations; the damages caused; the injury to property interest claims, continuity of the enterprise and the nexus assertions (relatedness) of Goodyear's acts in *Haeger* II and NHTSA deceptions to the pending Federal Court proceedings of *Haeger* I.  (*See* e.g. Goodyear's Reply, pp. 2, 15.)  To satisfy

the RICO continuity requirement for an enterprise, plaintiffs set forth the historical facts which describe the enterprise members, its purpose, who controlled it and its continuity; to date and in the future.  (Amended Complaint, ¶¶10-39.)  The factual allegations set forth exactly how Goodyear's enterprise continuously conspired to conceal the data which it was ultimately compelled to disclose in 2016.  As expressed:

> …  Goodyear knew and intended that its conduct would damage plaintiff's business and property interests and improperly interfere with plaintiff's business expectancies.  The scheme was so effective that it was not until late 2016 that plaintiffs were able to discover the vast deceptions in spite of their diligent efforts to discover the truth.

(Amended Complaint, ¶ 39.)

Goodyear knew it had repeatedly misled and was concealing requested failure data, including death and injury claims, property damage claims, related claim files and NHTSA documents throughout *Haeger* I and in *Haeger* II for years.  (Amended Complaint, ¶¶ 55, 70-74.)  Moreover, Goodyear admits that the materials were critical to understanding Goodyear's liability and only Goodyear knew what was being concealed.  (Amended Complaint, ¶¶ 60-61, 64.)  Goodyear admits that it knew as long as it continued to conceal information it was required to disclose, it would cause the plaintiffs to incur "thousands of hours of additional unnecessary expense."  (Amended Complaint, ¶¶ 66.)  The concealed property damage records, NHTSA communications, the number of tires sold for use on motorhomes and the injury, death and adjustment claims were all critical information which would reveal the defective nature of the G159.  (Amended Complaint, ¶¶ 70-74.)

Goodyear admits that it knew the concealed evidence was required to be timely disclosed when *Haeger* II commenced in 2013 and knew that if it was disclosed it would render *Haeger* II indefensible.  (Amended Complaint, ¶¶ 78-79.)  Specifically:

> Goodyear, its employees and agents knew if the requested relevant information was disclosed, it would reveal the defective nature of the G159, a national fraud in other G159 cases, various fraudulent claims made in other prior Arizona G159 cases, frauds upon the Federal Government, a litany of further deceptive acts defrauding the Federal Court in *Haeger* I and render the *Haeger* II case indefensible.

(Amended Complaint, ¶ 79.)

Goodyear admits that its concealment prevented plaintiffs' discovery of how Goodyear had continuously been deceiving the plaintiffs, in spite of the plaintiffs' continued "due diligence" over the years in pursuing the concealed data. (Amended Complaint, ¶ 82.) Goodyear admits it concealed evidence it was required to disclose as disclosure would render *Haeger* II indefensible. (Amended Complaint, ¶¶ 77-80.)

It took multiple motions to compel and related court orders *before* Goodyear disgorged the requested data years later in 2016. In the interim, years of unnecessary expenses were incurred. (Amended Complaint, ¶¶ 83, 84, 89, 90, 97, 109.) Goodyear admits that when the data was revealed it established the G159 was the most dangerous steel belted radial tire ever manufactured. The 2016 disclosures revealed that Goodyear had required plaintiffs to incur more than a decade of time and expense unnecessarily and revealed that Goodyear had knowingly and deceptively caused these business and property losses. (Amended Complaint, ¶ 112, 115.) Goodyear acknowledges that within days of the 2016 damning disclosures of NHTSA documents which revealed Goodyear had defrauded the federal government, plaintiffs, victims and the public regarding the failures of the tire, Goodyear settled *Haeger* II. (Amended Complaint, ¶¶ 111, 113, 116.) Goodyear knew plaintiffs had discovered they had been required to spend years of time unnecessarily and that plaintiffs intended to pursue these revenues losses. It was agreed that all of plaintiffs' claims were excluded from the settlement and would be separately pursued. (Amended Complaint, ¶¶ 115-128.)

Goodyear acknowledges that if it had timely disclosed the information which it was compelled to disclose in 2016, *Haeger* II would have been wholly unnecessary as Goodyear would have resolved the Haegers' claim at that time as it did in 2016, when it finally was compelled to reveal the information which rendered *Haeger* II (as well as *Haeger* I) indefensible. (Amended Complaint, ¶ 157.)

The *Haeger* II settlement was crafted to assure that the years of plaintiffs' revenue losses were excluded and could be separately pursued. (Amended Complaint, ¶¶ 115-120.) Plaintiffs were assured by Goodyear that the language in the Haegers' settlement

would not be used by Goodyear in any manner which restricted plaintiffs' ability to pursue their revenue losses.  (Amended Complaint, ¶¶ 120-123.)

In 2018, plaintiffs sought to recover a portion of the revenue losses from the Court in *Haeger* I, on remand.  Goodyear willfully misrepresented the meaning of the settlement agreement, misrepresented various prior determinations of the Federal Court from *Haeger* I and lied about the parties' agreements as part of its ongoing scheme to obstruct justice and to evade millions of dollars of payments.  It sought to keep sealed all facts submitted to the Federal Court as part of the enterprise's ongoing scheme to conceal the facts surrounding its defective tire.  (Amended Complaint, ¶¶ 124-133.)

For purposes of the Motion to Dismiss, each of these facts are deemed admitted. They also serve as factual support for the RICO claims (Counts One and Two), Fraudulent Misrepresentation (Count Two), Abuse of Process (Count Six) and Intentional Interference with Business Expectations (Count Eight) as they set forth acts after the May 2013 statute of limitations selected by the Court which have and will continue to cause damage. (Amended Complaint, ¶ 134.)

## II.    THE COURT'S DISMISSAL OF THE RICO CONSPIRACY CLAIM CONSTITUTES MANIFEST ERROR.

The facts setting forth the conspiracy and its continuity to date are set forth in the Amended Complaint.  (*See* e.g. ¶¶ 14, 17, 23, 35, 38, 49, 51, 66, 137-138, 145, 155, 160). Plaintiffs are entitled to pursue damage caused by *new acts after* the May 2013 statute of limitations as each act which injures the plaintiff starts the statutory period running again. *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189 (1997).  The Court overlooked or misapprehended this critical fact, which is manifestly unjust.

From 2013, when *Haeger* II commenced, until late 2016 when Goodyear finally complied with court orders compelling disclosure of failure data and NHTSA communications which rendered the case indefensible, Goodyear's every effort was focused upon keeping the data secret.  Goodyear knew its continued efforts would force

plaintiffs to spend thousands of hours unnecessarily.  All of those damages were incurred after the May 2013 date selected by the Court, when the statute of limitations accrued.

**III.     THE COURT FAILED TO ADDRESS THE FACTS DEEMED ADMITTED WHICH TOLL THE STATUTE OF LIMITATIONS BASED UPON FRAUDULENT CONCEALMENT.**

Arizona law recognizes that the statute of limitations does not accrue until a plaintiff knows, or in the exercise of reasonable diligence should know, the facts underlying the damage claim.  The statute is tolled if the facts demonstrate that Goodyear intentionally caused delay and then sought to take advantage of it by pleading the statute. *Brodowy v. Ratheon, Co.*, 257 Fed. Appx. 12 (9th Cir. 2007).  This is what Goodyear admittedly has done.

Goodyear admits, as it must in a 12(b)(6) motion, that plaintiffs exercised due diligence in their pursuit of the information which was continuously concealed by Goodyear.  (Amended Complaint, ¶¶ 39, 82.)  In RICO cases, if a party is reasonably diligent in attempting to discover the deception, then they are entitled to assert fraudulent concealment to toll the statute of limitations.  *Klehr v. A.O. Smith,* 521 U.S. 179, 194 (1997).

This Court relied upon the *Beneficial Standard Life Insurance Co. v. Madariaga,* 851 F.2d 271 (9th Cir. 1988), and its holding that the RICO claims accrue "when [the plaintiff has] actual or constructive knowledge of the fraud."  The complete expression is broader than that expressed in this Court's Order.  The Court's holding was that a four-year statutes of limitations period "accrued when [plaintiff] had actual or constructive knowledge of the fraud, unless the statute was tolled."  *Id.* at 275.

*Haeger* II, commenced in 2013 and settled in 2017, was about fraudulently concealed *test data* and its impact upon the value of the Haegers' settlement.  The Court orders compelling the disclosures of injury and death claims, property damage claims and the NHTSA communications were premised upon their relationship to the punitive damage claim, which was also at issue in *Haeger* II.  (Amended Complaint, ¶ 84.)

- 7 -

Plaintiffs knew that Goodyear felt it could defend the concealed test data and that plaintiffs would incur ongoing expenses pursuing pre-2013 damages for concealed test data deceptions. What plaintiffs did not know was that those ongoing expenses were all unnecessary, a fact which Goodyear is deemed to admit.  At a minimum, plaintiffs are surely entitled the revenue losses during *Haeger* II, while Goodyear continued to willfully conceal the damning information that compelled Goodyear to settle *Haeger* II, following its untimely disclosure.

Plaintiffs' diligence in pursuing the concealed data is likewise undisputed in Goodyear's Motion to Dismiss.  There is nothing else the plaintiffs can do other than request the concealed information, pursue it by motion, and then await Goodyear's final disclosure in response to multiple court orders.

The Amended Complaint sets forth the active concealment by Goodyear of the data which defeats any claim of constructive knowledge because the actions by definition, "prevented a reasonable person from discovering the fraud through the exercise of due diligence." *Beneficial* at 276.

Count 5 of the Amended Complaint sets forth the fraudulent concealment claim.  It incorporates the factual allegations of the Amended Complaint.  It asserts that Goodyear, by concealment, intentionally prevented plaintiffs from timely acquiring relevant information and that Goodyear prevented plaintiffs from learning of the relevant facts in a timely fashion to their damage.  It specifies that Goodyear's deceptive acts were intended to hide information.

The factual assertions in the Amended Complaint are replete with references to Goodyear's concealment efforts, the purpose of those efforts over the years and plaintiffs continued diligence to discover the truth.  These facts, deemed admitted, reveal "why" Goodyear's efforts to avoid disclosure spanned a period of years and Goodyear's knowledge that if disclosed, the data would have rendered *Haeger* II indefensible.  When Goodyear finally complied with the Court's orders compelling disclosure in late 2016, Goodyear quickly settled the case as it was then indefensible.  Goodyear's Motion to

Dismiss also admits, as it must, that all of plaintiffs' revenue losses were unnecessarily incurred as Goodyear would have settled the *Haeger* litigation in 2006, if it had timely disclosed this defense destroying information when first requested in discovery in *Haeger* I, rendering *Haeger* II unnecessary.  (Amended Complaint, ¶ 157).  These facts toll the statute of limitations until late 2016, rendering all of the claims timely filed.

Even if the Court declines to toll the statute of limitations, the damages caused by new overt acts after *Haeger* II was filed are timely asserted.  "… [A] cause of action accrues when new overt acts occur within the limitations period.  *Grimmet v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996).

An overt act which restarts the statute of limitations is a new and independent action which inflicts new and accumulating injury.  *Grimmet* at 513.  *Haeger* II sought damages reflecting the difference between the settlement amount and the true value of claims asserted in *Haeger* I as a result of concealed test data prior to 2013.  [Doc. 34, p. 2.]  The disclosure rules in *Haeger* II, a state case, were entirely dissimilar to the Federal rules which controlled *Haeger* I.  In particular, A.R.C.P. 26.1 required Goodyear to disclose (without any discovery request) all documents and evidence relevant to the action.  This was a new Goodyear obligation and the facts, deemed admitted, establish the scheme employed to evade compliance spanned a period of years in its losing endeavor to successfully suppress the truth from emerging.  Goodyear refused to disclose the data until 2016 when it finally complied with multiple orders compelling disclosure.  Similarly, Goodyear, at this stage must admit that its conduct caused new damage as it required thousands of hours of unnecessary work which damaged plaintiffs' business.  Certainly all of the unnecessary work between October 1, 2014 and October 1, 2018 (the date this action was filed), is within the RICO statute of limitations.

## IV. THE ABUSE OF PROCESS AND INTENTIONAL INTERFERENCE COUNTS INCLUDE ADMITTED FACTUAL ALLEGATIONS OF MISCONDUCT WHICH OCCURRED IN 2017 AND 2018, RENDERING THE CLAIMS TIMELY.

The Amended Complaint sets forth the facts, deemed admitted, regarding the settlement of *Haeger* II in early 2017.  It was agreed that the fee claims arising out of the thousands of hours of wasted time were excluded from the settlement and could be separately pursued by the plaintiff.  The parties agreed that the language in the settlement agreement would not serve as any limitation upon plaintiffs' pursuit of those claims. (Amended Complaint, ¶¶ 120-123.)  In violation of that agreement, Goodyear thereafter submitted a false presentation to the Federal Court in *Haeger* I on remand in 2018 in its endeavor to preclude the recovery of additional fees as sanctions (representing a portion of plaintiffs' revenue losses) based upon the 2016 newly discovered frauds which successfully deceived the Court and which caused plaintiffs' ongoing damage.  The filings in Federal Court in 2018 constitute abuse of process, obstruction of justice, mail fraud and intentional interference with plaintiffs' business expectancy as part of an admitted ongoing scheme. The acts have caused new and continuing damage.  These claims cannot be dismissed on a statute of limitations basis.

## V. THE COURT MISTAKENLY CONCLUDES THAT THE DAMAGE CLAIM ARISES FROM THE FAILURE TO DISCLOSE TEST RESULTS.

The Court's factual conclusion is not supported by the record and misstates and transforms the gravamen of the Complaint.  The Amended Complaint sets forth ample detail to show that it was *not* the damage claims arising from the failure to disclose test results that are at issue in the Amended Complaint.  Rather, as is deemed admitted, Plaintiff's damages arise from the thousands of hours of unnecessary time incurred during the years Goodyear concealed the long outstanding data which when disclosed compelled Goodyear to immediately settle *Haeger* II as it was then indefensible. Although undisclosed testing is obviously discussed in the Complaint because it is integral to the RICO claim, the conclusion that the essence of the Complaint was damage claims that

arose from the failure to disclose test results is simply wrong thus making the conclusion manifestly unjust.

## VI.   THE COURT'S FAILURE TO APPLY THE DISCOVERY RULE TO CAUSATION CONSTITUTES MANIFEST ERROR.

The allegations of the Amended Complaint, deemed admitted, reveal that the thousands of hours and years of work in *Haeger* II was wholly unnecessary, as Goodyear would have settled the *Haeger* litigation in 2006 if it had timely disclosed the requested data, which it was compelled to disclose in 2016.

It was not until 2016 that plaintiffs discovered the *cause* of the years of time wasted. The statute of limitations did not accrue until Goodyear complied with the Court orders compelling disclosure in 2016, which rendered the case "indefensible."

## CONCLUSION

The utility of motions for reconsideration, and the standards governing its application, is to allow the trial court an opportunity to remedy a clear and incontrovertible *(i.e.,* a "manifest") error of law it made, avoiding the cost and delay of appeal. *Wallace v. Hayes (In re Wallace)*, Case No. 11-21077-TLM, at \*5 (Bankr. D. Idaho Feb. 27, 2013).  Rather than rehashing the same arguments on appeal, the foregoing demonstrates that the district court either overlooked or misapprehended certain critical issues and concepts thus justifying reconsideration and a denial of the motion to dismiss.

RESPECTFULLY SUBMITTED this 22nd day of July, 2019.

TURNER & ASSOCIATES, P.A.


By:   */s/ Tab Turner*
Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR   72116

David L. Kurtz
THE KURTZ LAW FIRM
7420 East Pinnacle Peak Road, Suite 128
Scottsdale, AZ   85255

*Attorneys for Plaintiff*

- 11 -

1

## CERTIFICATE OF SERVICE

2  ☒  I hereby certify that on July 22, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal
3  of a Notice of Electronic Filing to the following CM/ECF registrants:

4  Foster Robberson
   frobberson@lrrc.com
5  Jared L. Sutton
   jsutton@lrrc.com
6  LEWIS ROCA ROTHGERBER CHRISTIE LLP
   201 East Washington Street, Suite 1200
7  Phoenix, AZ   85004-2595

8  Jill G. Okun
   jokun@porterwright.com
9  PORTER WRIGHT MORRIS & ARTHUR LLP
   950 Main Street, Suite 500
10  Cleveland, OH   44113

11

12

13  ☐  I hereby certify that on July 22, 2019, I served the attached document by mail on the
    following, who are not registered participants of the CM/ECF System:
14

15

16

17  By___/s/ K. C. Rusboldt_____

18

19

20

21

22

23

24

25

26

27

28